UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| STEVEN GEORGE BODNAR, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:25-CV-1002-CCB-AZ |
| BRYAN ENGLISH, et al., | |
| Defendants. | |

## AMENDED OPINION AND ORDER

Steven George Bodnar, a prisoner without a lawyer, filed a lengthy (18-page), difficult to read, and confusing[1] complaint with ninety-two pages of exhibits. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Bodnar, who is housed at the Miami Correctional Facility ("MCF"), asserts that he has been afraid for his life for the last year and a half. He alleges a series of incidents have occurred and he has been moved repeatedly due to safety concerns, but he has not

---

[1] For example, Bodnar indicates he is suing fifteen defendants, but he lists twenty-one separate defendants.

been granted protective custody. He is currently housed in restrictive housing, and he feels unsafe there. However, he is scheduled to be released to general population on December 18, 2025, and he believes he will then be in greater danger.

Bodnar does not explain what happened in a chronological order, and he has omitted many important details from his complaint. The court has tried to piece together what happened from the complaint and exhibits attached to the complaint.

In August 2024, Bodnar started having trouble with other inmates because he was not affiliated with a gang. ECF 1 at 5. Gang-affiliated inmates were allegedly extorting him in exchange for protection. ECF 1-1 at 63. He first sent a request for protection on August 9, 2024. ECF 1 at 5. While protective custody was denied, he was moved in lieu of protective custody. ECF 1-1 at 63.

In September 2024, he filed a Prison Rape Elimination Act ("PREA") complaint against his cellmate, Joseph Rose. ECF 1 at 5. Bodnar's complaint does not describe the incident leading to the PREA complaint, but exhibits attached to the complaint show that Bodnar complained that Rose masturbated in front of him. ECF 1-1 at 52. After Bodnar filed the PREA complaint, he remained in the same cell as Rose for a week. *Id.* During that time, Rose hit Bodnar, spat on him, and tried to make Bodnar pay his drug debt. *Id.*

In March 2025, he filed several requests for protection after an assault by inmate Austin Mahone and threats from gang-affiliated inmates.[2] ECF 1 at 5; ECF 1-1 at 14-29.

---

[2] Bodnar does not describe the nature of the assault. Exhibits submitted with the complaint indicate that Mahone beat Bodnar up and that inmates believe Bodnar is a snitch. ECF 1-1 at 14.

2

When he turned in one of his requests for protection, the officers who received the request read it, laughed, and showed it to inmates. ECF 1 at 5. The request was denied, but his cellmate was moved. ECF 1-1 at 14. Not satisfied with this solution, on March 20, 2025, Bodnar "was forced to secure [his] own safety because nobody would help [him]." ECF 1 at 4, 6. Bodnar threw urine on a guard and was taken to restrictive housing. ECF 1 at 8.

Bodnar filed another request for protection on June 13, 2025. ECF 1 at 13; ECF 1-1 at 11. The request form makes broad statements about his life, well-being, and safety being at risk, but it does not describe any specific threat. ECF 1-1 at 11. The document references attachments that may have provided additional context, but it is unclear from Bodnar's exhibits what was attached to this request. *Id.* It too was denied. *Id.* at 10.

On July 2, 2025, while housed in the restrictive housing unit, inmate Louie Fisher threw a fluid that contained fecal matter at Bodnar. ECF 1 at 5; ECF 1-1 at 65. Bodnar says this is the result of Officer Lewis telling Fisher and other inmates that Bodnar was a snitch. ECF 1 at 5.

On October 3, 2025, Officers Grimes and Springs put inmate Gary Thomas in Bodnar's cell. ECF 1 at 5. Thomas destroyed Bodnar's property. Bodnar speculates that Officer Grimes and Officer Springs placed Thomas in his cell on purpose. ECF 1 at 6, 8. Bodnar explains that he had issues with Officer Springs in September 2024, when he was trying to get moved from the cell he shared with Joseph Rose. *Id.* While in this cell, Bodnar was getting threats from Tiandre Harris, Marvin Moyes, an inmate assigned to cell #408, and Holiday also known as Key Lord. ECF 1 at 5. On October 6, 2025, Bodnar

3

was moved to another cell for his safety. *Id*. After the October incident, Bodnar claims he is afraid to leave his cell to shower, attend recreation, or call family. *Id.* at 7.

Bodnar says he wrote Warden Brian English on a couple of occasions asking for help and a voluntary transfer to a facility that has a mental health unit. *Id.* at 6. Warden English did not reply. *Id.* at 7. Bodnar also wrote to DII and the classification department requesting orders that he be separated from the gang-affiliated inmates he listed in his requests for protection, including Austin Mahone, Louis Fraire, Joseph Rose, Jack Burnett, Charles Vankempn, Jerry Gore, Louis Fisher, Rodger, Blackburn, Carter, Gary Thomas, Marvin Moyers, and Holiday a/k/a Key Lord. ECF 1 at 7. Bodnar also expressed his belief that Officer Gadd, Officer Lewis, Officer Grimes and Officer Springs pose a threat to him.[3] *Id.* His inquires received no response. *Id.*

He is currently housed in a unit that also houses Immigration and Customs Enforcement ("ICE") detainees. ECF 1 at 12. When Bodnar went to a physical therapy appointment, he was shackled but ICE detainees were present and not shackled. *Id.* Bodnar was fearful they would attack him. Bodnar speculates that unidentified officers might allow an ICE detainee in his cell just like Officer Grimes and Officer Springs allowed Gary Thomas in his cell in October 2025. *Id.* at 17. He further speculates that the detainee could hide and attack him when he enters the cell. *Id*.

---

[3] None are named as defendants in this action.

4

One of the ICE detainees housed near Bodnar is throwing feces. *Id.* at 16. Bodnar alleges that the officers are not cleaning the feces up. *Id.* The detainee is also flooding his cell, causing toxic waste to spread throughout the range. *Id.*

Bodnar also notes that he has been housed with inmates that are never going home and inmates that pose greater security threats than he does. ECF 1 at 13. Bodnar also notes that levels of violence are high at MCF, and there are frequent lockdowns. *Id.* at 14. He describes an incident that occurred on November 26, 2025, in N Housing Unit, where twelve inmates were stabbed. *Id.* The same day, an inmate was killed in J Housing Unit due to a gang-related incident. *Id.* A couple weeks before that, there was a fight in J Housing Unit. *Id.* Bodnar wants to file another request for protection, but he asserts that staff will not provide him with the form. *Id.* at 13.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). When an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). However, "prisons are

5

dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008).

Here, Bodnar is concerned about the mere possibility that an ICE detainee, an inmate with a different security classification, or an inmate who does not expect to be released from prison may harm him. These fears are not based on a specific, credible, and imminent risk of serious harm and are not linked to a prospective assailant. The Constitution does not require that Bodnar be housed separately from ICE detainees or inmates who may pose greater security risks than he does.

Additionally, Bodnar has named a number of high-ranking officials as defendants without alleging that they were personally involved in decisions regarding his housing assignments or requests for protective custody. He names the following individuals as defendants without explaining how they were personally involved in violating his rights: Warden Bryan English, Deputy Warden Mr. Ertel, Mr. Wise from internal affairs, Deputy Warden Aaron Smith, Assistant Superintendent Mr. Engle, Mrs. Heishman from internal affairs, Dalton Haney from classification, Tracy Warden from classification, Mr. Angle from Unit Team and Protective Custody Team, K. Murry from Unit Team and Protective Custody Team, I.D.O.C. Assistant Warden William Wilson, I.D.O.C. Assistant Warden Donald Emerson, I.D.O.C. Assistant Warden Christina Regal, Associate General Counsel Elisa Gallagher, Nina Hummel of the I.D.O.C.'s Legal Services Division, the I.D.O.C.'s Tort Claims Administrator, the I.D.O.C. Commissioner, and Attorney General Todd Rokita.

Most of these individuals are not mentioned in Bodnar's complaint at all. He does mention mailing something to Warden English and unnamed individuals in both the classification and DII departments, but merely alleging that, at some point in time, he mailed them a request for help does not state a claim for relief. There is no general supervisory liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). [P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

While Bodnar cannot proceed against any of these defendants for monetary damages, he has described a series of attacks and threats involving numerous inmates affiliated with gangs. It can be plausibly inferred from this series of events that, without some safeguards, returning Bodnar to general population could jeopardize his safety. Thus, the court will permit him to proceed against Warden English in his official capacity for permanent injunctive relief only. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("[T]he warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out.").

Bodnar has also named the entire Classification Department of the I.D.O.C. as a defendant, but he cannot proceed against the Classification Department. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (allegations that referred to "defendants" collectively without connecting specific defendants to specific acts were insufficient under federal pleading standards); *see also Henderson v. Wall*, No. 20-1455, 2021 WL

7

5102915, at *1 (7th Cir. Nov. 3, 2021) ("[B]y making allegations about large, indeterminate groups of defendants, [the plaintiff] deprived them all of proper notice of what they were accused of doing."). Therefore, Bodnar may not proceed against the Classification Department.

He has sued I. Ivers, a mental health worker, too. While it is clear from the complaint that Bodnar is having some mental health challenges due to his circumstances, he has not alleged any facts suggesting that I. Ivers was personally involved in denying him constitutionally adequate medical care. Therefore, he may not proceed against I. Ivers.

He also named I.D.O.C. Health Care Operations as a defendant, but this is not a suable entity. He may have intended to sue Centurion Health of Indiana, LLC, but he has not alleged facts that could state a claim against Centurion. A private company performing a public function can be held liable if its own policies caused an alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Bodnar has not alleged that any policy of Centurion or I.D.O.C. Health Care Operations caused a constitutional violation, and he therefore may not proceed against Centurion or I.D.O.C. Health Care Operations.

Likewise, Bodnar complains about the current conditions in his cell due to an ICE detainee that is throwing feces and flooding the unit, but he does not link his allegations to any particular defendant. Bodnar has not pled facts from which it can be plausibly inferred that any named defendant was deliberately indifferent to his conditions of confinement.

For these reasons, the court:

(1) **GRANTS** Steven George Bodnar leave to proceed against Warden English in his official capacity to obtain permanent injunctive relief to protect him from attacks by other inmates, as required by the Eighth Amendment;

(2) **DISMISSES** all other claims;

(3) **DISMISSES** Ertel, Wise, I. Ivers, Aaron Smith, Engle, Heishman, Dalton Haney, Tracy Warden, Angle, K. Murry, William Wilson, Donald Emerson, Christina Regal, Elise Gallagher, Classification Department, Health Care Operations, Nina Hummell, Tort Claims Administrator, Commissioner, and Todd Rokita;

(4) **CONSTRUES** the complaint (ECF 1) as containing a motion for preliminary injunction and DIRECTS the clerk to separately docket it as a motion for preliminary injunction;

(5) **DIRECTS** the clerk to email a copy of this order and the complaint (ECF 1) to Warden English at the Miami Correctional Facility;

(6) **DIRECTS** the United States Marshals Service to **immediately** serve process by certified mail under 28 U.S.C. § 1915(d) on Miami Correctional Facility Warden English;

(7) **ORDERS** Warden English to file and serve a response to the request for preliminary injunctive relief contained in the complaint as soon as possible but not later than **December 18, 2025** (with supporting documentation and declarations from other staff as necessary) describing the measures currently being used to ensure Bodnar's

9

safety and the safety measures that will be in place when his term in restrictive housing ends of December 18, 2025; and

(8) **GRANTS** Steven George Bodnar until **January 3, 2026**, to file a reply to Warden English's response.

(9) **ORDERS**, under 42 U.S.C. § 1997e(g)(2), Warden English to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on December 12, 2025.

/s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT