UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

STEVEN GEORGE BODNAR,

Plaintiff,

v.

BRYAN ENGLISH, N. ANGLE, AND CHRISTINA REGAL,

Defendants.

CAUSE NO. 3:25-CV-1002-JD-AZ

OPINION AND ORDER

Steven George Bodnar, a prisoner without a lawyer, initiated this case by filing a complaint naming 21 defendants and seeking monetary damages and both preliminary and permanent injunctive relief. ECF 1. The court screened that complaint and granted Bodnar leave to proceed on one claim against Warden English in his official capacity to obtain permanent injunctive relief to protect him from attacks by other inmates, as required by the Eighth Amendment. ECF 8. Bodnar filed an amended complaint (ECF 20) that also sought preliminary and permanent injunctive relief before the first request for preliminary injunctive relief had been fully briefed. This court denied both Bodnar's original request for preliminary injunctive relief and the subsequent request contained in his amended complaint. ECF 28. After finding that Bodnar had not demonstrated he was likely to suffer irreparable harm in the absence of an injunction, the court deferred screening the amended complaint. *Id.* A subsequent request for preliminary injunctive relief was also denied. ECF 75; 76. This case was stayed pending screening of the amended complaint. ECF 55.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Bodnar's factual allegations in his amended complaint are not materially different from those in his earlier complaint, although he has now limited his complaint to three defendants: Warden Bryan English, UTM N. Angle, and IDOC Director Christina Reagle. ECF 20. After being housed in the infirmary at the Miami Correctional Facility ("MCF"), Bodnar was moved into the general population at MCF. In August 2024, he started having trouble with other inmates because he was not affiliated with a gang. ECF 20 at 3. Gang-affiliated inmates were allegedly extorting him in exchange for protection. He submitted a request for protection on August 9, 2024. *Id.* at 4. In response, he was moved to N cell house.

In September 2024, he filed a Prison Rape Elimination Act ("PREA") complaint against his cellmate, Joseph Rose. Bodnar complained that Rose masturbated in front of him. Bodnar was moved from the cell he shared with Rose, but he remained in the same unit. Rose continued to threaten and harass Bodnar, along with other inmates. Bodnar then filed another request for protection. After several weeks, he was moved to another cell house. But Bodnar still refused to pay for protection or join a gang, so he continued

to be harassed and his property was stolen.[1] At one point, he was required to sleep on a top bunk even though he had a bottom bunk pass.

Because his requests for protection had been denied, mainly by UTM Angle, Bodnar felt he had no choice but to assault an officer so he would be placed in restrictive housing, where he would be safe. On March 14, 2025, he threw urine on officers. He was initially moved to another cell but remained in the same cell house. The next day, an inmate assaulted him. After that incident, he again sought protective custody. The officers read his request, laughed, and shared the information with other inmates.

On March 20, 2025, he was moved to restrictive housing. Angle screened Bodnar for the conduct charge. Bodnar asked Angle if he knew why he did this, and Angle said he had "a pretty good idea." ECF 20 at 6. Bodnar pled guilty, meaning he would stay in restrictive housing until December 18, 2025. In July 2025, while still in restrictive housing, Bodnar was attacked by an inmate who threw bodily fluids at him. He believes this occurred because officers had labeled him as a snitch.

[1] The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." But, a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional deprivation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy.") Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq.*) and other laws provide for state judicial review of property losses caused by government employees and provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). Thus, to the extent that Bodnar intended to state a claim based on lost property, he cannot proceed.

On October 3, 2025, Bodnar returned to his cell to find that officers had placed another inmate inside his cell. The officer escorting Bodnar to his cell almost opened it. Bodnar believes this was done on purpose so that Bodnar would be attacked. He was harassed by various inmates while housed in RHU. On October 6, 2026, Bodnar was moved to a different cell in RHU. Inmates continued to harass him in the new cell.[2]

On December 17, 2025, Bodnar was moved to another cell in the RHU. On December 25, 2025, Bodnar witnessed another inmate who had suffered puncture wounds being removed from his cell. This contributed to Bodnar's anxiety about his own wellbeing.

Bodnar's various requests for protection submitted since August 2024 have named ten different inmates who allegedly posed a threat to him. He indicates that he has been threatened and harassed by members of various gangs including the Vice Lords, Latin Kinds, MS13, Aryan Brotherhood, GDs, Hell Raisers, Nazi Syndicate, and Saxon Nights. He has had issues with several officers too. In short, Bodnar believes that officers, officials, and inmates all wanted to harm him.

[2] While in restrictive housing, Bodnar was unable to call his family because many of the phones in the RHU were not working properly. While inmates retain a limited right to intimate association, here Bodnar does not allege that he has been deprived of alternative means of communicating with his family, such as letters. *See Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003) ("[F]reedom of association is among the rights least compatible with incarceration."); *Turner v. Safley*, 482 U.S. 78, 90 (1987) (directing courts to consider, among other factors, "whether there are alternative means of exercising the right that remain open to prison inmates."). Furthermore, this allegation is not linked to any defendant named in this action. Thus, Bodnar's allegation that he was unable to make phone calls while in restrictive housing does not state a claim.

Bodnar also alleges generally that he had limited access to the law library while in restrictive housing. Although the prison may not deny an inmate access to all legal materials, they are permitted to determine when and under what circumstances the inmate accesses those materials. *See Lewis v. Casey*, 518 U.S. 343, 351-52 (1996). This too is not linked to any defendant named in this action. Therefore, his allegations regarding limited law library access do not state a claim.

Bodnar notes that, in October of 2024, he wrote to Warden English asking for help obtaining a voluntary transfer to a facility that could assist with his mental health and addiction needs. He did not receive any help from the warden. Bodnar also wrote to the Department of Internal Investigations, Classification, Warden English, the assistant warden, and Mental Health about his problems. He filed grievances too.

As explained in this court's earlier screening order (ECF 8), the Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). When an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008).

Here, Bodnar alleges that UTM N. Angle denied many of his requests for protection, but Bodnar has not pointed to any particular request that alleged *both* a specific credible threat *and* a resulting physical injury. Mere fear of an attack that does

not occur does not state a claim for failure to protect. *Doe v. Welborn*, 110 F.3d 520, 523–24 (7th Cir. 1997) ("An allegation that prison officials exposed a prisoner to a risk of violence at the hands of other inmates does not implicate the Eighth Amendment's Cruel and Unusual Punishments Clause." (internal quotation marks and citation omitted)). Therefore, Bodnar has not stated a claim against Angle.

Bodnar lists IDOC Director Christina Regal as a defendant, but she is not mentioned in the amended complaint at all. Additionally, he alleges that he wrote to Warden English about his problems and that he did not receive help. Merely alleging that, at some point in time, he mailed Warden English a request for help does not state a claim for relief. There is no general supervisory liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). [P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

The amended complaint does not state a claim for monetary damages against any of the named defendants. While Bodnar was previously permitted to proceed against Warden English in his official capacity for injunctive relief, at that time Bodnar remained at the Miami Correctional Facility. He has since been transferred, and so any claim for injunctive relief in his amended complaint is moot. "If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred." *Higgason v. Farley*,

83 F.3d 807, 811 (7th Cir. 1996). Here, there is no reason to believe that Bodnar is likely to be transferred back to MCF.

The amended complaint does not state a claim for which relief can be granted. Bodnar has already had one opportunity to amend his complaint. His allegations still do not state any claims for monetary relief and his claim for injunctive relief was rendered moot by his transfer. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). "District courts, however, have broad discretion to deny leave to amend a complaint where the amendment would be futile." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023). For the reasons previously explained, it would be futile to allow Bodnar another opportunity to amend his complaint.

For these reasons, the court:

(1) LIFTS the stay issued pending screening of the amended complaint (ECF 55); and

(2) DISMISSES this case under 28 U.S.C. § 1915A because the amended complaint does not state a claim for monetary damages and because his claim for injunctive relief is MOOT.

SO ORDERED on November 6, 2026

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT